IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE REVELS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DAVID DIGUGLIELMO, WARDEN; | : | NO.  03-5412 |
| THE DISTRICT ATTORNEY OF | : | |
| THE COUNTY OF PHILADELPHIA, | : | |
| LYNNE ABRAHAM, and THE ATTORNEY | : | |
| GENERAL OF THE STATE OF | : | |
| PENNSYLVANIA, THOMAS CORBETT[1] | : | |

DUBOIS, J.                                                                                                    JULY 18, 2005

**MEMORANDUM**

**I.     INTRODUCTION**

Petitioner, Maurice Revels ("petitioner"), is a state prisoner currently incarcerated at the State Correctional Institution in Graterford, Pennsylvania.  He was convicted in the Philadelphia Court of Common Pleas of first-degree murder, criminal conspiracy, possession of an instrument of crime, and violation of the Uniform Firearms Act.  On September 26, 2003, petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. §2254 in this Court.

The Petition was referred to Magistrate Judge Charles B. Smith for Report and Recommendation.  In the Report and Recommendation dated September 8, 2004, the Magistrate Judge recommended that the Petition be denied.  Petitioner filed Objections to the Report and Recommendation which presented a single issue–error by the Magistrate Judge in concluding that the trial judge's decision to preclude the testimony of Deborah Griffin, Esq., did not warrant habeas relief.  For the reasons set forth below, the Court overrules petitioner's Objections,

---

[1]The present Attorney General, Thomas Corbett, is automatically substituted as defendant for the former Attorney General of Pennsylvania, Michael Fisher.

approves and adopts the Report and Recommendation in part, and denies the Petition for Writ of Habeas Corpus.

## II.     FACTS

On March 7, 1994, following a jury trial in the Philadelphia Court of Common Pleas, petitioner and a co-defendant were convicted of first-degree murder, criminal conspiracy, possession of an instrument of crime, and violation of the Uniform Firearms Act.  Petitioner was sentenced to life imprisonment for the murder charge, consecutive terms of five to ten years for aggravated assault, and eighteen months to five years for violating the Uniform Firearms Act.

The facts of the case are detailed in the Report and Recommendation and need not be repeated in full in this Memorandum.  Instead the Court will focus on those facts relevant to the single issue raised by petitioner's Objections–whether the Magistrate Judge erred in determining that the trial judge's decision to exclude the testimony of Deborah Griffin, Esq., offered to rebut and impeach the testimony of Christopher Perrin, did not warrant habeas relief.

At petitioner's trial, the government read into the record the preliminary hearing testimony of Mr. Perrin, who died before the trial.  During his preliminary hearing testimony, at which he was cross-examined (2/22 Tr. at 130), Mr. Perrin testified that petitioner and his co-defendant committed the murder at issue.

Petitioner offered at trial the testimony of Ms. Griffin,[2] the attorney who represented Mr. Perrin during his preliminary hearing testimony.  Counsel for petitioner stated that "the offer of proof would be that Ms. Griffin told us that in the course of that brief representation of Mr.

---

[2] The Court notes that Ms. Griffin is currently a Judge in the Philadelphia Court of Common Pleas. (Pet. Obj. at 10).

Perrin at that preliminary hearing, that he had, in fact, admitted to her that he was involved in this homicide; that he had shot [the victim] and that he had, in fact, stolen the Tec .9 weapon that was used." (2/25/94 Tr. 84:17-25).

The trial court ruled that Ms. Griffin's testimony was inadmissible hearsay not excepted as a statement against penal interest because Mr. Perrin could not be subject to criminal penalties for confidential attorney-client communications. (2/25 Tr. at 86-87). That court also determined that Mr. Perrin's out-of-court statement lacked "extra reliability" (2/25 Tr. at 91:19-20, 93:1-10) or additional "indicia of reliability" weighing in favor of admission because: (1) Mr. Perrin's communications to his attorney were not against his penal interest (2/25 Tr. at 86, 89); (2) Mr. Perrin was unavailable at trial to be cross examined on this subsequent statement (2/25 Tr. at 94), (2/28 Tr. at 9), (3/1 Tr. 19); and (3) Ms. Griffin lacked credibility. (2/25 Tr. at 93, 97).[3]

The trial court also barred Ms. Griffin's testimony to the extent it was offered to impeach Mr. Perrin's preliminary hearing testimony. In so ruling, it relied upon Commonwealth v. Sandutch, 498 Pa. 536 (1982), in which the Pennsylvania Supreme Court barred a party from "impeach[ing] an unavailable coconspirator's prior testimony [subject to cross-examination] through the admission of subsequently created tapes and pretrial applications." (3/1 Tr. at 18-19). The trial court stated that "Sandutch seems to say that you do not allow these outside extrinsic records, so to speak, to be used for impeachment of that sworn testimony, by a now unavailable witness." (Id.). Finally, the trial court raised the possibility, without ruling, that Mr. Perrin's

---

[3] In finding that Ms. Griffin lacked credibility, the trial court cited the fact that she was attempting to testify to a privileged communication–conduct possibly sanctionable under the professional rules (2/25 Tr. at 97); that she had previously represented the defendant's girlfriend; and that, as of the time of the trial, she was suspended from the practice of law. (2/25 Tr. at 93); (10/11/94 Opinion at 14 n.8).

communications to Ms. Griffin were inadmissible under the attorney-client privilege. (2/25 Tr. 85, 98-100); (2/28 Tr. at 15); (3/1 Tr. at 4).

Following petitioner's conviction, the trial court issued an opinion on October 11, 1994 denying the claims of error. In that opinion the court stated that it had "properly refused to hear Ms. Griffin's testimony, since nothing Ms. Griffin proffered would be legally admissible" under Sandutch and because Ms. Griffin's testimony was "highly suspect." (Ct. Cm. Pl. Op. 10/11/94 at 13-15).

Petitioner filed a direct appeal in the Pennsylvania Superior Court, arguing, *inter alia*, that the trial court erred in excluding Ms. Griffin's testimony. On July 12, 1995, the Superior Court affirmed the judgment of the Court of Common Pleas. Commonwealth v. Revels, 667 A.2d 443 (Pa. Super Ct. 1995) (table). In so ruling, the Superior Court adopted that portion of the trial court's opinion addressing this issue. (Id.). On March 12, 1996, the Pennsylvania Supreme Court denied petitioner's request for allocatur. Commonwealth v. Revels, 674 A.2d 1069 (Pa. 1996) (table).

### III. POSTCONVICTION PROCEDURAL HISTORY

Following denial of his request for state postconviction relief,[4] petitioner filed a Petition for Writ of Habeas Corpus in this Court on September 26, 2003. The Petition included nine grounds, including "Ground Nine: whether the trial court erred in [prohibiting] the defense from introducing the testimony of Ms. Deborah Griffin, Esquire, for the purpose of impeaching the previously offered preliminary hearing testimony of Christopher Perrin where, *inter alia*, the

---

[4] A more detailed recitation of Petitioner's state postconviction history can be found in the Report and Recommendation. See Revels v. Diguglielmo, 2004 WL 2009312 (E.D. Pa. 2004).

defense has a right under the caselaw of this Commonwealth to offer exculpatory evidence and to impeach testimony offered through the reading of a preliminary hearing transcript at the trial." (Pet. at 10). By Memorandum and Order dated July 13, 2004, the Magistrate Judge concluded that the Court of Common Pleas violated petitioner's Compulsory Process rights by excluding Ms. Griffin's testimony, and it ordered that an evidentiary hearing be held to determine whether this error was harmless. See Revels v. Diguglielmo, 2004 WL 1576650 (E.D. Pa. 2004). On July 28, 2004, respondents filed Objections and a Motion to Stay the Order granting an evidentiary hearing; this Court referred these submissions to the Magistrate Judge. By Order dated September 8, 2004, the Magistrate Judge granted respondents' Motion to Stay Magistrate Judge's Order Granting an Evidentiary Hearing, and sustained respondents' Objections to the Magistrate Judge's Memorandum and Order granting that hearing for the reasons set forth in the Report and Recommendation of that date.

## IV.   REPORT & RECOMMENDATION

The Report and Recommendation of Magistrate Judge Smith dated September 8, 2004, recommended that the petition for writ of habeas corpus be denied. That recommendation was based on the Magistrate Judge's conclusion that "the exclusion of Ms. Griffin's testimony was arbitrary and, thus, fundamentally unfair, such that it violated petitioner's constitutional rights," under the Compulsory Process Clause, and that it was "an unreasonable application of federal law" under 28 U.S.C. §2254(d). Revels, 2004 WL 2009312 at *14, 17. Continuing, the Magistrate Judge reasoned that the trial court's ruling excluding Ms. Griffin's testimony as inadmissible hearsay was arbitrary because the trial court impermissibly weighed Ms. Griffin's credibility in determining that the declarant's statement lacked the necessary "indicia of

5

reliability" for admission as a declaration against penal interest. Id.

The Magistrate Judge also stated in a footnote following his analysis that "[t]o the extent the state court relied on Commonwealth v. Sandutch this [c]ourt still finds the reasoning improper," because the trial court "did not take into consideration the countervailing benefit of Ms. Griffin's testimony to petitioner's case," and the fact that "Ms. Griffin's testimony would be subject to cross-examination, allowing the jury to make their own decision about the reliability of this evidence." Id. at *16 n.8. The Magistrate Judge then determined that the trial court's error was harmless because "the impeaching evidence available against Ms. Griffin seriously undermines any finding that her testimony would have had an impact on the jury's verdict. . . The highly suspect nature of this testimony, taken together with [the other evidence at trial] leave little question that had Ms. [Griffin's] testimony been admitted, the jury would not have altered its verdict." Id. at *17.

In his Objections to the Report and Recommendation, filed October 27, 2004, petitioner argues that, with respect to the preclusion of Ms. Griffin's testimony, the trial court violated his Compulsory Process rights and that the violation was not harmless error. Respondents take the position in their Response to the Objections that, as to that issue, petitioner failed to state a cognizable federal claim in his Petition because he relied solely on state authority and was thus time-barred from raising such claim in his later submitted brief in support of the Petition. Respondents also argue that petitioner failed to exhaust any such federal claim in state court. Finally, they asserts that the trial court did not violate petitioner's constitutional rights because it correctly relied on three separate evidentiary rules to exclude Ms. Griffin's testimony: (1) that the testimony was hearsay inadmissible as a declaration against penal interest; (2) that Mr. Perrin's

statement to Ms. Griffin was protected by the attorney client-privilege; and (3) that the Pennsylvania Supreme Court decision in Sandutch barred admission of this testimony to impeach Mr. Perrin. Respondents assert that none of these rules were applied arbitrarily in violation of the Compulsory Process Clause, and that any violation constituted harmless error.

V.      **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. §2254(d).

"To hold a state court decision is 'contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States,' a federal court must find the state court arrived 'at a conclusion opposite to that reached by [the Supreme] Court on a question of law,' or that the state court confronted facts 'materially indistinguishable from a relevant Supreme Court precedent' but arrived 'at a result different from' that reached by the Supreme Court.'" Moore v. Morton, 255 F.3d 95, 104 (2001) (quoting Williams v. Taylor, 529 U.S. 362 (2000)).

Alternatively, a state court's decision is an unreasonable application of federal law if "(1) the state court identified 'the correct governing legal rule from [the Supreme] Court's cases but unreasonably applie[d] it to the facts' of the particular case, or (2) the state court unreasonably extended or failed to extend a legal principle from the Supreme Court's precedent.. . . '[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's

application of clearly established federal law was objectively unreasonable.'" Id.

"'[C]learly established Federal law, as determined by the Supreme Court of the United States' refers to Supreme Court 'holdings, as opposed to the dicta,' as of the time of the relevant state court decision." Id.

## VI. DISCUSSION

### A. Procedural Default

In their Response to petitioner's Objections, respondents argue that petitioner failed to exhaust in state court his federal claim arising out of the trial judge's decision to preclude the testimony of Deborah Griffin and is thus procedurally defaulted from raising this claim in this Court. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that. . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254. In order to exhaust his claims in state court, a petitioner must "fairly present" them–he must "present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). The Third Circuit has held that a petitioner may do so, *inter alia,* by "reliance on state cases employing constitutional analysis in like fact situations." Id.

The Court notes that petitioner, in his brief on this issue on direct appeal to the Superior Court of Pennsylvania, cites Commonwealth v. Hackett, 225 Pa. Super 22 (1973), for the proposition that "fundamental principles of fairness and due process of law require the admission of declarations against penal interest." Id. at 29-30. The court's holding in Hackett was based on the constitutional analysis announced in the U.S. Supreme Court decision, Chambers v.

Mississippi, 410 U.S. 284 (1973)–an analysis of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Hackett, 225 Pa. Super at 29-30. Thus, in his brief to the Superior Court, petitioner, "reli[ed] on [a] state case[] employing constitutional analysis in like fact situations." McCandless, 172 F.3d at 261   However, because the Court denies this claim on the merits, it need not determine whether petitioner fairly presented it as a federal claim at every stage of his appeal and thus exhausted the claim in state court. See 28 U.S.C. §2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

     B.     **Cognizability of Petitioner's Federal Claims in the *Pro Se* Petition**

Respondents, in their Response to the Objections, assert that petitioner failed to state a cognizable federal claim in Ground Nine of his *pro se* petition because he only cited state authority in support of this Ground. Ground Nine, as set forth in the *pro se* petition, reads as follows:

> "WHETHER THE TRIAL COURT ERRED IN PUBLISHING [SIC] PROHIBITING THE DEFENSE FROM INTRODUCING THE TESTIMONY OF MS. DEBORAH GRIFFIN, ESQUIRE, FOR THE PURPOSE OF IMPEACHING THE PREVIOUSLY OFFERED PRELIMINARY HEARING TESTIMONY OF CHRISTOPHER PERRIN WHERE, INTER ALIA, THE DEFENSE HAS A RIGHT UNDER THE CASE LAW OF THIS COMMONWEALTH TO OFFER EXCULPATORY EVIDENCE AND TO IMPEACH TESTIMONY OFFERED THROUGH THE READING OF A PRELIMINARY HEARING TRANSCRIPT AT TRIAL BASED ON COMMONWEALTH V. DAVIS INFRA AND COMMONWEALTH V. SMITH, INFRA."

(Pet. at 10)(reverse side).

There is no specific reference to federal authority in Ground Nine. Moreover, neither Commonwealth v. Smith nor Commonwealth v. Davis make reference to federal law in

9

addressing the issue argued in Ground Nine. Thus, the Court agrees with respondents that Ground Nine, as set forth in the petition, does not make specific reference to federal law.

The first reference to federal law with respect to the issue of Deborah Griffin's testimony is found in petitioner's brief in support of habeas corpus petition filed on July 1, 2004. In that brief, petitioner argues that he was "denied a fair trial and due process" and relies on U.S. Supreme Court authority analyzing the Due Process Clause and Confrontation Clause of the U.S. Constitution. In their response to the Objections, respondents point out that the July 1, 2004 brief was not submitted until after the expiration of the statute of limitations period.

The Court agrees that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and that "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68-69 (1991). However, Courts in the Third Circuit "have long recognized that a *pro se* petitioner's pleadings should be liberally construed to do substantial justice." U.S. v. Garth, 188 F.3d 99, 108 (3d Cir.1999) (applying the "forgiving lens used to construe *pro se* habeas petitions"). See also Maldanado v. Verner, 2004 WL 377691, at *7 & n5 (E.D. Pa. Feb. 13, 2004) (report and recommendations) (ruling on merits of petitioner's claim under the Confrontation Clause although he relied exclusively on state authority in support of that claim), approved and adopted, 2004 WL 2203745 (E.D. Pa. Sept. 27, 2004) (Sanchez, J.).

The Court concludes that, although petitioner failed to cite federal authority in Ground Nine of his *pro se* Petition, this ground implicates federal law. That determination is based on the fact that petitioner invoked federal authority in his brief on this issue in the Superior Court on direct appeal and clarified this federal constitutional claim in his brief in support of the Petition

in this Court.[5]  In light of these circumstances and the obligation to construe *pro se* submissions liberally, the Court reads Ground Nine of the Petition to assert a two-part claim under the U.S. Constitution: (1) that the trial court's exclusion of Ms. Griffin's testimony as hearsay violated petitioner's rights under the Compulsory Process and Due Process Clauses; and (2) that the trial court's exclusion of Ms. Griffin's testimony for impeachment purposes violated his rights under the Confrontation Clause.  The Court addresses these issues in turn.[6]

### C. Compulsory Process/Due Process Clause Claim

#### 1. Applicable Law

The Supreme Court has demonstrated a "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." Crane v. Kentucky, 476 U.S. 683, 690 (1986).  However, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Id. at 690 (1986) (internal citations omitted).

The Compulsory Process Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. CONST. Amend VI.  The Clause "protects the presentation of the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary

---

[5]  Because the Court concludes that this brief merely clarifies the federal claim raised in Ground Nine of the *pro se* Petition, the Court need not analyze the timeliness of this subsequent submission and specifically whether it relates back to the filing of the Petition under Federal Rule of Civil Procedure 15(c).

[6]  The Court limits this decision construing Ground Nine as a federal claim to the facts of this case in which habeas relief is denied.

rule, a prosecutor's misconduct, or an arbitrary ruling by the trial judge." <u>Government of Virgin Islands v. Mills</u>, 956 F.2d 443, 445 (3d Cir. 1992). Similarly, "the right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations," and includes the right "to call witnesses in one's own behalf." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973). Courts of Appeals have held that "[t]here is apparently little, if any, difference in the analysis" under the Due Process or Compulsory Process Clauses. <u>See</u> <u>Government of Virgin Islands v. Mills</u>, 956 F.2d 443, 446 (3d Cir. 1992). <u>See also</u>, e.g., <u>Allen v. Morris</u>, 845 F.2d 610, 615 n.5 (6th Cir.1988); <u>Cikora v. Dugger</u>, 840 F.2d 893, 897 n.4 (11th Cir.1988). Accordingly, this Court will apply authority on both constitutional provisions in its analysis of the trial court's hearsay ruling.[7]

The Third Circuit has held that a petitioner must satisfy three requirements to establish that a trial court's evidentiary ruling violated the Due Process or Compulsory Process Clauses. "First, he [must establish that he] was deprived of the opportunity to present evidence in his favor." <u>Mills</u>, 955 F.2d at 446. "Second, [he must show] that the excluded testimony would have been material and favorable to his defense." <u>Id.</u> (internal citations omitted). Third, petitioner must establish that "the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." <u>Id.</u>

Finally, even where a court determines that a petitioner's Compulsory Process or Due Process rights were violated, that court must establish that the violation was not harmless error,

---

[7] Although the Magistrate Judge only applied the Compulsory Process Clause to the trial court's hearsay ruling, it acknowledged that petitioner's claim also invoked the Due Process Clause and that these provisions require the same analysis. <u>Revels</u>, 2004 WL 2009312 at *14 n.5. Moreover, the Magistrate Judge relied upon authority analyzing both clauses.

i.e., that "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Chapman v. California, 386 U.S. 18, 23 (1967) (quoting Fahy v. State of Connecticut, 375 U.S. 85 (1963)); Crane v. Kentucky, 476 U.S. 683, 691 (1986).

### 2. Analysis: Exclusion of Testimony as Hearsay under the Compulsory Process and Due Process Clauses

"The hearsay rule. . . is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability." Chambers v. Mississippi, 410 U.S. 284, 298 (1973) (citing California v. Green, 399 U.S. 149, 158 (1970)). In Chambers v. Mississippi, the Supreme Court ruled that a state trial court violated the Due Process Clause by excluding the out-of-court confessions of a third party where those statements were made "under circumstances that provided considerable assurance of their reliability." Chambers, 410 U.S. at 300. More specifically, the Court cited four such "assurances" or "indicia of reliability": (1) that the third party confessions were made spontaneously to a close acquaintance shortly after the crime; (2) that the confessions were corroborated by their "sheer" number and by additional evidence in the case, including the third party's sworn confession and eyewitness testimony; (3) that the hearsay statement was "self-incriminatory and unquestionably against interest," i.e., that the third party "must have known that disclosure would lead to criminal prosecution"; and (4) that the declarant was available for cross-examination at trial on the hearsay statements at issue. Id. at 300-301. See also U.S. v. Delgado, 903 F.2d 1495, 1500 (11th Cir. 1990); U.S. v. Slaughter, 891 F.2d 691, 698 (9th Cir. 1989).

Turning to the facts of this case, the Court of Common Pleas correctly held that Ms.

Griffin's testimony lacked at least two of the requisite "indicia of reliability" announced in Chambers. First, the trial court concluded that, unlike the declarant in Chambers, Mr. Perrin's communications with his lawyer, Ms. Griffin, were protected by attorney-client privilege and therefore not against his penal interest. (2/25 Tr. at 86, 89). Second, the trial court weighed heavily the fact that Mr. Perrin was deceased at the time of trial and therefore could not be cross-examined on his alleged out-of-court statement. (2/25 Tr. at 94); (2/28 Tr. at 9); (3/1 Tr. 19).[8] Thus, on the basis of these rulings, this Court concludes that the trial court's decision was not arbitrary or disproportionate, and therefore also not contrary to, or involving an unreasonable application of, the Due Process or Compulsory Process Clauses.

### D. Confrontation Clause Claim

In addition to ruling that Ms. Griffin's testimony was inadmissible hearsay, the trial court ruled that this testimony was inadmissible for impeachment purposes under Commonwealth v. Sandutch, 498 Pa. 536 (1982). In Sandutch, the Pennsylvania Supreme Court barred the admission of tape recordings and pretrial applications to impeach the admitted preliminary hearing testimony of an unavailable witness who was cross-examined during that previous testimony. Sandutch, 498 Pa. at 540 (holding that the admission of such impeachment testimony "would deprive the opposing party of any opportunity to rehabilitate its witness and make a mockery of the truth-seeking purpose of trial. The trial would thus become a contest of hearsay

---

[8] The Court agrees with the Magistrate Judge that the trial court erred in considering Ms. Griffin's credibility in excluding her testimony, instead of the credibility of the declarant. See Chambers, 410 U.S. at 300-301. Cf. U.S. v. Atkins, 558 F.2d 133, 135 (3d Cir. 1977). However the Court concludes that because the trial court based its decision on two of the four factors announced in Chambers, this error did not render the decision contrary to, or an unreasonable application of, federal law.

tapes, memoranda and legal pleadings, none of which were ever subject to cross-examination.").

In the Report and Recommendation, the Magistrate Judge concluded, in a footnote following its analysis of the hearsay issue, that "[t]o the extent the state court relied on Commonwealth v. Sandutch . . . this Court still finds the reasoning improper." Revels, 2004 WL 2009312 at *16 n.8. However, the Magistrate Judge failed to state whether this ruling violated clearly established federal law, and if so, which federal law.

In order to grant a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254(d) a federal court must conclude that the state court issued a ruling that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d). The Court concludes that by challenging the trial court's exclusion of Ms. Griffin's testimony for impeachment purposes, petitioner alleges a violation of the Confrontation Clause of the U.S. Constitution.

The Confrontation Clause provides a criminal defendant with the right "to be confronted with the witnesses against him." U.S. CONST., Amend VI. The Supreme Court has held:

> [T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross- examination. Of particular relevance here, we have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.

Delaware v. Van Arsdall, 475 U.S. 673, 678-679 (1986) (internal citations omitted). Violations of the Confrontation Clause are subject to a harmless error analysis. Id. at 679.

In Mattox v. U.S., the Supreme Court held that a trial court did not violate the

Confrontation Clause by barring hearsay testimony offered to impeach the former testimony of a deceased witness who was cross-examined during that former testimony.  Mattox, 156 U.S. 237, 248-250 (1895) ("The fact that one party has lost the power of contradicting his adversary's witness is really no greater hardship to him than the fact that his adversary has lost the opportunity of recalling his witness and explaining his testimony.").  Although the Supreme Court subsequently held that other hearsay declarations, not tested under cross-examination, can be impeached by hearsay testimony, it explicitly declined to extend this holding to the Court's decision in Mattox. See Carver v. U.S., 164 U.S. 694, 698 (1897) ("[Mattox] was put upon the ground that the witness had once been examined and cross-examined upon a former trial."); Smith v. Fairman, 862 F.2d 630, 637 (7th Cir. 1988) (distinguishing Mattox on the ground that it "involved the admission of hearsay in the form of prior trial testimony that the defendant had once had an opportunity to cross-examine"). See also U.S. McBride, 463 F.2d 44, 46-49 (5th Cir. 1972).

  Like the witness in Mattox, the declarant in this case, Mr. Perrin, was cross-examined by defense counsel during his preliminary hearing testimony. (2/22 Tr. at 130).  At trial the defendant offered Ms. Griffin's hearsay testimony to impeach Mr. Perrin's preliminary hearing testimony.  Thus, the trial court's decision to exclude this impeachment evidence under the state court decision in Sandutch was entirely consistent with Mattox and subsequent Supreme Court decisions on this issue.  Therefore, that decision was neither contrary to, nor an unreasonable application of, clearly established federal law under the Confrontation Clause. See Mattox, 156

U.S. at 248-50.[9]

**VII.   CONCLUSION**

For all of the forgoing reasons, the Court applies the analysis above to petitioner's claim regarding Ms. Griffin's testimony and concludes that the trial court did not violate petitioner's constitutional rights when it excluded that testimony. The Court otherwise approves and adopts the Report and Recommendation and denies the Petition for Writ of Habeas Corpus. Petitioner's Objections to the Report and Recommendation are overruled.

An appropriate Order follows.

---

[9] As noted above, the trial court did not rule that Mr. Perrin's statements were inadmissible under the attorney-client privilege. However, had the trial court held attorney-client privilege to be determinative, this decision would also not have been contrary to, or an unreasonable application of, federal law. The Supreme Court ruled in Swidler & Berlin that "[i]t has been generally, if not universally, accepted, for well over a century, that the attorney-client privilege survives the death of the client in a case such as this." Swidler & Berlin v. U.S., 524 U.S. 399, 410 (1998). The Supreme Court has also held that under the Compulsory Process Clause, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, *privileged*, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410 (1988) (emphasis added). Accordingly, Courts of Appeals, in ruling on this issue, have held that the exclusion of privileged attorney-client communications does not violate the Compulsory Process Clause. See Myers v. Frye, 401 F.2d 18, 21 (7th Cir. 1968); Valdez v. Winans, 738 F.2d 1087, 1090 (1St Cir. 1984) (10th Cir. 1984).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAURICE REVELS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **DAVID DIGUGLIELMO, WARDEN;** | : | **NO. 03-5412** |
| **THE DISTRICT ATTORNEY OF** | : | |
| **THE COUNTY OF PHILADELPHIA,** | : | |
| **LYNNE ABRAHAM, and THE ATTORNEY** | : | |
| **GENERAL OF THE STATE OF** | : | |
| **PENNSYLVANIA, THOMAS CORBETT**[10] | : | |

## O R D E R

**AND NOW**, this 18th day of July, 2005, upon consideration of the Petition for Writ of Habeas Corpus filed by the petitioner, Maurice Revels, and after review of the Report and Recommendation of United States Magistrate Judge Charles B. Smith dated September 8, 2004, Petitioner's Objections to the Report and Recommendation of United States Magistrate Judge Charles B. Smith dated September 8, 2004**,** and respondents' Response to Petitioner's Objections to the Report and Recommendation, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1. Petitioner's Objections to the Report and Recommendation of United States Magistrate Judge Charles B. Smith dated September 8, 2004 are **OVERRULED;**

2. The Report and Recommendation of United States Magistrate Judge Charles B. Smith dated September 8, 2004 is **APPROVED** and **ADOPTED IN PART**, as follows:

   a. The Court **DECLINES TO ADOPT** the Report and Recommendation with

---

[10] The present Attorney General, Thomas Corbett, is automatically substituted as defendant for the former Attorney General of Pennsylvania, Michael Fisher.

respect to those claims raised in Ground Nine of the Petition regarding the trial court's exclusion of testimony of Deborah Griffin, and instead adopts the analysis in the attached Memorandum**.**

b.  The Report and Recommendation is **APPROVED** and **ADOPTED** in all other respects.

3.  The Petition for Writ of Habeas Corpus filed by petitioner, Maurice Revels, is **DENIED**; and,

4.  A certificate of appealability will not issue on the ground that petitioner has not made a substantial showing of the denial of a constitutional right as required under 28 U.S.C. §2253(c).

**BY THE COURT:**

_____
**JAN E. DUBOIS, J.**